BROOM, Justice, for the Court:
Tax exemption benefits at a refinery under Mississippi Code Annotated § 27-31-19 (1972) were unsuccessfully sought by First Chemical Corporation (First Chemical herein) in response to the assessment of the City of Pascagoula (the city herein). After the city rejected First Chemical’s claim of exemption under the statute, First Chemical appealed to the Circuit Court of Jackson County, which court, sitting without a jury, tried the case de novo. The circuit court ruled that the inventory of First Chemical was exempt from ad valorem taxation pursuant to the provisions of § 27-31-19, supra, and the city appeals. We affirm.
Is the materials inventory of First Chemical exempt from ad valorem taxation within the purview of § 27-31-19, supra, which states:
There shall be exempt from all ad valo-rem taxes now levied or hereafter levied by the State of Mississippi, or any county, municipality, levee district, school, or any other taxing district within the state, all oil, gas, and petroleum products, whether produced within or without the state, which oil, gas or petroleum products are owned by a person, firm, or corporation operating a refinery for the refining of oil, gas or petroleum products in the state, and either (1) are in transit to or situated at such a refinery for refinihg thereat; (2) are in the process of being refined at such a refinery; or (3) have been refined at such refinery and are still owned by or in the hands of the refiner. Such exemption shall also extend to such oil, gas and petroleum products owned by any corporation controlled by, under common control with, or controlling such a refiner; provided, however, that the exemption afforded by this section shall not extend to those finished petroleum products incident to regular, normal, and customary marketing operations held in marketing bulk plants or retail service stations.
The controversy arises out of the tax levy adopted by the City of Pascagoula for the year 1978 attributable to taxes for the Pas-cagoula Municipal Separate School District. After the assessment rolls were received by the City Council, First Chemical petitioned the city to reduce any part of its assessment based upon First Chemical’s inventory on the basis that First Chemical’s inventory consisted of exempt petroleum products under § 27-31-19, supra. After a hearing, the city denied First Chemical’s petition. Admitted into evidence as Plaintiff’s Exhibit No. 2 was a certified copy of the personal property rendition form filed for the year 1978. The rendition form showed First Chemical’s business as being “Chemical Manufacturing” and showed that the inventory of First Chemical had a total value of $1,030,033 and consisted of the following products:
Benzene PNT
Toluene O-Tol
Nitric Acid O-MNT
MNB M-MNT
Aniline Meta cuts
MNT
According to the parties’ stipulation, the city used an assessment ratio of 30% for assessment purposes in 1978.
Testifying as an expert for First Chemical was its plant manager John Howell whose opinion was that the products listed on First Chemical’s inventory were petrole *162 um products with the possible exception of nitric acid. In his explanation of the inventory list he stated that benzene is a purchased raw material-a petroleum product. Nitric acid, according to him, is purchased as a raw material derived from petroleum products. He further testified that MNB is mono-nitrobenzene, produced from mixing benzene and nitric acid and then refined into a purer intermediate and sold in small amounts by the company. The nitroben-zene is reacted with hydrogen which results in the product called aniline, which is the major product of the company and comprises approximately 90% of its products. He described the process by which First Chemical produces aniline, and as a part of its operation he said that First Chemical refines or purifies nitrobenzene. He testified that the second primary product of First Chemical is ortho-toluidine constituting approximately 6% of the company’s production and according to him is a petroleum product. First Chemical, as stated by Howell, uses up to four refining processes in its operation, and approximately 70% of its plant is devoted to refining activities.
On cross-examination, Mr. Howell stated that First Chemical does not purchase or use any crude oil at its facility but uses natural gas, propane, and/or butane. His opinion was that First Chemical produces and refines petroleum products and therefore is a refinery.
Also testifying as an expert for First Chemical was Dr. James Mayes who holds a Ph.D. in Chemical Engineering from Johns Hopkins University. He defined a petroleum product as something refined or processed from petroleum. His opinion was that the items listed on First Chemical’s inventory on the third page, benzene, toluene, mono-nitrobenzene, aniline, meta-ni-trotoluene, para-nitrotoluene and ortho-to-luidine are petroleum products. According to Mayes, nitric acid is an inorganic material which is derived from petroleum. He stated that he was familiar with First Chemical’s operation and that its major product is aniline oil, a derivative of benzene, an aromatic compound in a technical sense. This witness stated that aniline oil is a petroleum product, and he described First Chemical’s process as a refinery. First Chemical rested its case after presenting Dr. Mayes.
Contrary to the testimony put on for First Chemical, the city presented Norman Breland, who has a master’s degree in Chemical Engineering. He testified as an expert and was asked whether this facility, as described, is “a refinery for the refining of oil, gas or petroleum products.” His opinion was that First Chemical’s facility was not an oil refinery but instead a chemical process plant. A refinery has to have crude oil as a feed stock according to Bre-land.
With the testimony before him, the lower court found:
[Wjhich inventory assessment was made on account of petroleum products owned by First Chemical Corporation and situated at its facility within the Pascagoula Municipal Separate School District which facility is a refinery for the refining of said petroleum products, and wherein said petroleum products are either situated, or in the process of being refined, or have been refined, all within the provisions of Section 27-31 — 19, Mississippi Code of 1972, and therefore exempt from ad valorem taxation within the Pascagou-la Municipal Separate School District under the provisions of said statute. .
The city takes the position on this appeal that the facility of First Chemical is a chemical manufacturing plant which takes pure benzene and toluene and produces pure aniline as its major product. Argument is that even though purifying, i. e., refining, is carried out in the process, the mere act of performing such purification does not bring the plant and the inventory within the scope of the exemption provided by the subject statute. The city raises the question: What does First Chemical do within its facility and, based thereupon, is it entitled to the exemption it seeks under § 27-31-19, supra ? Both the litigants agree that tax exemption statutes are *163 strictly construed and, when any doubt exists as to whether the exemption applies under a statute, such a doubt must be resolved in favor of the taxing authority and against the exemption. Both the litigants also agree that the purpose of the court in a case of this sort is to construe the statute so as to effect or apply the real intention of the legislature. The city suggests that we should examine the historical background including the proceedings of the extraordinary session of the legislature and the governor’s address which ultimately resulted in the present tax exemption statute. Noted by the city is the fact that the governor in his address proposing certain constitutional amendments and legislation to bring about the tax exemption, used the words “oil refinery.” The city also suggests that we should look to other historical background including the verbiage of other statutes dealing with oil refineries and the like.
Our review of pertinent cases indicates that we may in cases of this sort resort to “legislative history” only in litigation where the statute is ambiguous or unclear.
Summarized, § 27-31-19, supra, grants to a person, firm, or corporation an exemption from all ad valorem taxes levied by a school district for oil, gas and petroleum products, whether produced within or without the state, who: owns such products and operates a refinery for the refining of oil, gas or petroleum products in the state-products which either (a) are in transit to or situated at such a refinery for refining thereat; (b) are in the process of being refined at such refinery; or (c) have been refined at such refinery and are still owned by or in the hands of the refiner.
As the lower court found, careful scrutiny of the wording and language within the statute reveals no ambiguity. On the other land the language clearly reveals legislative intent: to exempt all oil, gas and petroleum products (inventory) owned by any person, firm or corporation operating a refinery for the refining of oil, gas or petroleum products.
First Chemical argues that had the legislators in enacting § 27-31-19, supra, intended to exempt inventory of a crude oil or petroleum facility only, they would have expressed such intent and accordingly limited the statue. Instead of doing this, the legislators saw fit to use language in the statute covering oil, gas or petroleum products.
There can be no doubt in our minds, having carefully studied the statute, that under the testimony introduced First Chemical’s inventory, including the raw materials, in process work, and finished products, consists of petroleum products. The totality of the testimony introduced which was heard and accepted by the lower court establishes that First Chemical employs several refining processes in its production of aniline oil, and in fact uses almost all of the known methods of refining in the various parts of its plant. Clearly the witness Howell testified that First Chemical’s plant both produces and refines petroleum products and therefore is a refinery.
To the same effect was the testimony of Dr. Mayes. Contrariwise, Mr. Breland, accepted as an expert (in behalf of the city) in the field of chemical engineering, after stating that he was not personally familiar with First Chemical’s facilities, gave his opinion that a refinery must have crude oil as a feed stock.
The lower court, as was its burden, after hearing the evidence made a determination that First Chemical operates a refinery for the refining of oil, gas or petroleum products. Additionally, the lower court found that First Chemical’s inventory taxed by Pascagoula consisted of petroleum products which were: in transit to or situated at First Chemical’s facility for refining; in the process of being refined at the refinery; or had been refined there and were still owned by or in its hands. Accordingly, he granted First Chemical the exemption from ad valo-rem taxation, and we cannot upon the record find reversible error.
AFFIRMED.
*164 SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C. J., takes no part.